HOLLOWAY, Circuit Judge,
dissenting:
I respectfully dissent. I would hold that the district court erred in granting summary judgment to the Defendant School District and would reverse so that Plaintiffs evidence could be considered by a jury. I am convinced that the district court and the majority here have failed to consider the evidence in the light most favorable to Plaintiff and to draw all reasonable inferences in her favor. To explain my views, I begin with a brief review of the evidence taken in the proper light.
Plaintiff, who was a middle school principal at the relevant time, alleges that she was constructively discharged without due process. Plaintiff was in her fourth year in her position when a new administrator, Ms. Bailey, became her supervisor. Early in the school year, in October, Bailey put plaintiff on a performance improvement plan (PIP). Plaintiff believed from that time that Bailey wanted to fire her. The school system’s history supported her fears: of the three or four principals who had been put on such plans in the past, all had been terminated.
Plaintiff also thought that the goals expressed in the plan were so vague that it would be difficult, if not impossible, to assess her progress.[1] She wrote two let *695 ters to Ms. Bailey and Ms. Martin, who was the District’s personnel director, trying to get discussion on this. But Bailey and the district overreacted, construing the letters as formal grievances, which were denied.
As part of the PIP, Plaintiff met about five times with Bailey. But Plaintiff testified in deposition (and on summary judgment her testimony must be viewed favorably to Plaintiff) that Bailey was completely unhelpful in these sessions, refusing to clarify or even discuss the standards by which Plaintiffs progress would be measured. Moreover, Ms. Bailey did not put herself in a position to assess Plaintiffs progress or lack thereof towards reaching some of these goals. For instance, the PIP required Plaintiff to “[u]se collaborative processes to ensure all voices are heard, all outcomes are shared, and there are collective mission, vision, commitments, and goals which are widely communicated and shared.” Because Ms. Bailey apparently never attended any faculty, staff, or committee meetings at which Plaintiff might have attempted to achieve these broadly stated goals, a reasonable juror could conclude that Bailey was not making an honest attempt to assess Plaintiffs progress. Accordingly, a reasonable juror could credit Plaintiffs belief that the PIP was a pretext to get rid of her, rather than a sincere attempt to guide Plaintiff toward improved performance.
On January 18, 2008, a Friday, Plaintiff was summoned to a meeting on two hours’ notice. Plaintiff did not attend the meeting, as the majority’s review of the facts discloses. Although Ms. Martin stated in an affidavit that the purpose of the requested meeting would have been to discuss the PIP, Ms. Bailey herself later testified in deposition that the decision had been made that Plaintiff would not be offered the opportunity to remain in her position as principal the following year.
As the majority notes, Plaintiff was immediately suspended for insubordination for refusing to attend the meeting when her request that another person be present was refused. The suspension included a demand that Plaintiff turn in her keys, refrain from speaking to any other District employee about the matter, and not come onto school premises. Plaintiff testified that she believed that she was being fired. On the next business day, Plaintiff was visited by the school’s attorney who told her that the District was no longer interested in her services. Also on that day Ms. Bailey notified parents that Plaintiff would no longer be the principal at the school. Plaintiffs theory is that she was constructively discharged either on that date, January 22, or eight days later when she accepted other employment. It was some weeks later, on February 20, when the District sent her a letter advising her that she had been assigned to a position at the high school.
Although the majority mentions some— but not all — of these facts in its recitation of the background of the appeal, none of them are mentioned in the two paragraphs that the majority devotes to applying the relevant legal principles to the facts of the *696 case. The majority holds, by necessary implication, that this evidence fails to provide a sufficient basis from which a reasonable jury could conclude that Plaintiff’s working conditions had become so intolerable that a reasonable person would feel forced to resign. Maj. op. at 693. I strongly disagree. I am perplexed that evidence that an employer sends a lawyer to tell an employee that she is not wanted is deemed insufficient to overcome summary judgment on this key issue.[2]
While the majority fails to mention— much less to credit — Plaintiffs evidence in its quite perfunctory discussion on the constructive discharge issue, it does devote attention to evidence that is simply irrelevant to the present task of assessing the evidence in the light most favorable to Plaintiff. For example, we are told the exact date that the Defendant considered Plaintiffs employment to have ended (even while the facts that occurred on the date that Plaintiff considered that she had been constructively discharged are omitted from the majority’s analysis).
“Tellingly,” the majority says, Maj. op. at 694, Plaintiff had already considered other employment opportunities. What is “telling” is how clearly this sentence reveals that the majority is not viewing the evidence in the proper light. True enough, a reasonable jury could find it telling that Plaintiff had begun to look at other opportunities and could even conclude, as the majority does, that Plaintiff voluntarily abandoned her job. But while a jury could draw this adverse inference, this court may not do so in reviewing summary judgment against Plaintiff. That the majority appears to draw this inference in contradiction of the proper standard of review in this appeal is indeed telling.
The majority’s analysis seems based entirely on four factors that we listed in Lighton v. Univ. of Utah, 209 F.3d 1213, 1222 (10th Cir.2000), and earlier cases. Although, as the majority’s quotation from the case discloses, our analysis should be under the totality of the circumstances “including” the four listed circumstances, the majority’s analysis seems to be limited to those factors. Common sense and our experience teach that not all factors will be relevant in all cases. I am particularly troubled by the majority’s treatment of the first listed factor — whether the Plaintiff was given some alternative to resignation. Again, common sense and our experience counsel that not all alternatives are equally acceptable. But the majority here merely recites that Plaintiff was given an alternative without even asking whether a reasonable person in Plaintiff’s position would have found it an intolerable one. Most significantly, the majority cites no evidence — and I have not found any evidence — that Plaintiff had been offered an alternative at the time she considered herself to have been terminated and so accepted employment elsewhere.
In sum, I would hold that the district court erred in its grant of summary judgment to the Defendant on this record. Plaintiffs evidence was sufficient for a reasonable jury to find in her favor on her constructive discharge claim. The most striking piece of evidence is that the De *697 fendant had told Plaintiff that she was not wanted.[3] The most glaring fault in the majority’s reasoning is its failure to take account of this fact. I must respectfully dissent.

. The PIP had been prepared without Plaintiff’s input, in apparent violation of state law. See Colo.Rev.Stat. § 22-9-106(3.5), which provides that a PIP "shall be developed by the district ... and the teacher or principal." (Emphasis added.) That statute goes on to direct that the principal be given "a reasonable period of time to remediate the deficiencies” and "a statement of the resources and assistance available" for the task. The District asserts (Defendant-Appellee's Brief at 26, n.3) that it complied with the statute. But *695 the District cites no evidence that Plaintiff was given an opportunity to participate in formulation of the PIP, nor does it provide any basis on which we could conclude that the quoted language means something other than that Plaintiff should have been afforded that opportunity. Defendant does note that the statute has been held not to provide a private right of action, see Axtell v. Park School Dist., 962 P.2d 319, 321 (Colo.App.1998), but Plaintiff has not contended that it does. Instead, Plaintiff apparently notes this fact as part of the totality of the circumstances involving her treatment by the District, and I find the fact is relevant for that limited purpose.

. During his conversation with Plaintiff on January 22, the District’s attorney, Price, "informed her that the District was no longer interested in her services and that he had been directed to negotiate a settlement to resolve the matter.” Maj. op. at 690. As previously noted, the majority opinion recites this fact in its “Background” section, but the majority apparently finds it of no significance, because it is not mentioned in the "Analysis” section.

. The majority weakly observes that the lawyer did not tell Plaintiff that she was terminated. If he had, I point out that Plaintiff would not be relying on the theory of constructive discharge. More importantly, the lawyer told Plaintiff, according to her testimony, that the District wanted her termination: "the district is no longer interested in your services." The lawyer also told Plaintiff that he had been asked "to negotiate a settlement for your con-tract....” Plaintiff testified that this, together with the demand that she turn in her badge, were "two very good indications that I didn’t have a job anymore.”